IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LAMAR JOHNSON,

    Petitioner,

v.

AUDREY KING, Executive Director
California Department of Mental
Health,

    Respondent.

No. C 16-1373 WHA (PR)

**ORDER DENYING PETITION AND DENYING CERTIFICATE OF APPEALABILITY**

## INTRODUCTION

Petitioner filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254 challenging his civil commitment to Coalinga State Hospital pursuant to California's Sexually Violent Predators Act. *See* Cal. Welf. & Inst. Code § 6600, et seq. ("SVPA"). Respondent was ordered to show cause why the petition should not be granted. Respondent has answered, and petitioner has filed a traverse. For the reasons discussed below, the petition is **DENIED**.

## STATEMENT

I. SVPA COMMITMENT PROCEEDINGS

The SVPA authorizes the state to file a petition to civilly commit a person as a sexually violent predator ("SVP"), which is someone who (1) has been convicted of a sexually violent offense and (2) suffers from a diagnosed mental disorder that makes it likely that he will engage in sexually violent criminal behavior in the future. *See* Cal. Welf. & Inst. Code § 6600(a)(1). The commitment petition must be filed while the individual is still in custody under a determinate prison term, as a result of parole revocation, or under a special SVPA-authorized

"hold" (§ 6601(a)(2)). After the petition is filed, the superior court must hold a probable cause hearing, and then a jury trial at which a unanimous jury must find beyond a reasonable doubt that the individual meets the criteria for an SVP (§§ 6602-03). Prior to 2006, an SVP was committed for a two-year term but could be recommitted to an unlimited number of sequential terms. In 2006, Proposition 83 was passed and now an SVP is committed to a state mental hospital for an indeterminate term but with yearly reviews of their mental condition by a mental health professional (§§ 6603(d), 6604, 6604.9(a)).

An SVP can seek release: (1) if the Department of State Hospitals (DSH) determines that his or her mental disorder "has so changed that the person is not likely to commit acts of predatory sexual violence while under supervision and treatment in the community" and recommends conditional release, and the trial court makes a finding of conditional release after a hearing; or (2) up to one time per year an SVP may petition the trial court for conditional release without DSH concurrence, and the court must hold a hearing if the petition is not frivolous (§§ 6607, 6608). The trial court determines conditional release based upon the same standard used for the initial commitment (§ 6608(g)). The burden is on the SVP to prove by a preponderance of the evidence that he meets that standard, i.e. that it is unlikely that he will "engage in sexually violent criminal behavior due to his or diagnosed mental disorder if under supervision and treatment in the community" (§ 6608(g),(k)). However, if the DSH issues a report recommending conditional release, then the burden is on the state to prove by a preponderance of the evidence that the SVP should not be released (*ibid.*).

II. PETITIONER'S COMMITMENT PROCEEDINGS

In 1984, petitioner pleaded guilty to assault with intent to commit rape of a 24-year-old woman. Before he was sentenced, in yet another crime he raped a 15-year-old girl and later pled guilty to statutory rape. He was imprisoned for these two crimes and released on parole in 1985. In 1992, he was convicted of two counts of rape, assault with intent to commit sodomy, forcible oral copulation, and assault with intent to commit rape. He was sentenced to a term of 36 years in state prison. After serving over 17 years, his date for release on parole was set for June 28, 2011.

Before petitioner's release from prison, prosecutors petitioned for his civil commitment as an SVP. At a jury trial in 2012, four psychologists testified as experts. The state's experts, Drs. Padilla and D'Orazio diagnosed petitioner with "paraphilia not otherwise specified with non-consenting persons," also known as "para philic coercive disorder." This disorder is marked by sexual arousal or gratification involving nonconsenting persons persistent over a six-month period. The experts diagnosed petitioner with this disorder because of the number of petitioner's offenses over a lengthy period of time, the similar modus operandi, the fact that a consenting partner was available to him, he showed quick recidivism when he was not in custody, and his continued arousal while the victims resisted. Based upon a statistical analysis, they predicted a 21 to 28 percent chance that he would commit another sexual offense within 10 years if released into the community. Petitioner's first expert, Dr. Abbot, testified that the existence of paraphilic coercive disorder was rare and there was no consensus as to its definition in the psychology community. Dr. Abbot opined that petitioner did not have the disorder and instead was an "anger" rapist, that there was a six percent chance he would re-offend if released, and that he did not pose a well-founded risk he would re-offend. Dr. Heard testified for petitioner as well. He testified that paraphilic coercive disorder did not exist, that petitioner raped out of anger, and that he did not have a mental disorder that would compel him to re-offend. He estimated based upon petitioner's age less than a seven percent chance that he would re-offend if released into the community.

Following the jury's verdict, petitioner's appeal and habeas petitions to the California Court of Appeal were denied in a joint opinion that was published in part. His petition for review to the California Supreme Court was summarily denied.

**ANALYSIS**

I. STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.§ 2254(a). The petition may

3

not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409. The state court opinion reviewed under Section 2254(d) in this case is the opinion of the California Court of Appeal because the California Supreme Court denied petitioner's claims in a summary opinion without explanation.

II. CLAIMS FOR RELIEF

1. Claims One and Two

After the judgment committing petitioner under the SVPA, the American Psychiatric Association released a new edition of the Diagnostic and Statistic Manual ("DSM") that no longer included the kind of paraphilic coercive disorder used for petitioner's diagnosis. In his first claim, petitioner argues that because of this development, his commitment was based upon an invalid diagnosis which violated his right to due process. In his second claim, he argues that

4

the expert testimony diagnosing him with that disorder constituted "false" evidence.

The later removal of paraphilic coercive disorder from the DSM does not mean that his commitment violates his right to due process. The Court of Appeal correctly found that the "federal constitutional right to due process does not require an SVP commitment to be based on a disorder that is uniformly recognized by the mental health community." *People v. Johnson*, Nos. A136573, A140310, A143775, slip op. at 21 (Cal. Ct. App. Mar. 13, 2015), *as amended*, slip op. 1-2 (Cal. Ct. App. Apr. 7, 2015). States may, in defining who may be civilly committed, employ mental health categories that "do not fit precisely with the definitions employed by the medical community." *Kansas v. Hendricks*, 521 U.S. 346, 359 (1997). The scientific debate over paraphilic coercive disorder. including its exclusion from the DSM, does not mean that the diagnosis is "too imprecise a category" such that commitment of an individual as an SVP based on such a diagnosis runs afoul of due process. *McGee v. Bartow*, 593 F.3d 556, 570, 581 (7th Cir. 2010) (citing *Hendricks*, 521 U.S. at 373) ("we cannot conclude that the diagnosis of a [paraphilic coercive disorder] is so empty of scientific pedigree or so near-universal in its rejection by the mental health profession that civil commitment cannot be upheld as constitutional when this diagnosis serves as a predicate").

The California Court of Appeal correctly concluded that even if the latest edition of the DSM "reflects a growing skepticism in the psychiatric community about paraphilic coercive disorder (a.k.a. paraphilia non-consent), we cannot conclude that a commitment based on that disorder violates due process." *Johnson*, slip op. at 23. California does not define an SVP in lock-step with mental disorders recognized by the DSM. The assessment of an SVP is based upon "diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders, including criminal and psychosexual history, type degree, and duration of sexual deviance, and severity of mental disorder." *Reilly v. Superior Court*, 57 Cal. 4th 641, 647 (2013) (quoting California Welfare and Institutions Code Section 6601(c)) (internal quotations omitted). For the persuasive reasons discussed in *McGee* and the Court of Appeal in this case, the disagreement between the doctors who found petitioner to be an SVP on the one hand, and petitioner's experts and the later edition of the DSM on the other,

5

does not mean that petitioner's commitment violates his right to due process.

In addition, the prosecution experts' diagnosis of petitioner was an opinion that cannot be considered "false evidence." As the Ninth Circuit has explained, when new expert testimony contradicts expert testimony for the prosecution that was presented at trial, the trial testimony is "simply a difference in opinion — not false testimony." *See Gimenez v. Ochoa*, 821 F.3d 1136, 1142-43 (9th Cir. 2016); *see also Odle v. Calderon*, 65 F.Supp.2d 1065, 1073 (N.D. Cal. 1999). The Court of Appeal correctly found that the professional disagreement on the validity of paraphilic coercive disorder does not mean that the prosecution's expert testimony was "false," only that it was disputed. Accordingly, the revision of the DSM after trial did not result in a violation of due process or a verdict based upon "false" evidence.

The state courts' rejection of the first and second claims was neither "contrary to" nor an "unreasonable application" of federal law within the meaning of AEDPA. Petitioner may not receive federal habeas relief on these claims.

2. <u>Claim Three</u>

Petitioner claims that the jury instruction given pursuant to CALCRIM No. 3454 lowered the prosecution's standard of proof. The instruction at issue stated:

> The petition alleges that Lamar Johnson is a sexually violent predatory. To prove this allegation, the People must prove beyond a reasonable doubt that he has been convicted of committing sexually violent offenses against one or more victims[, h]e has a diagnosed mental disorder, and as a result of that diagnosed mental disorder, he is a danger to the health and safety of others because it is likely that he will engage in sexually violent predatory criminal behavior . . .
>
> A person is likely to engage in sexually violent predatory criminal behavior if there is a substantial danger that is a serious and well-founded risk that the person will engage in such conduct if released in the community. The likelihood that the person will engage in such conduct does not have to be greater than 50 percent.

*Johnson*, slip op. at 12; Vol. 7 RT 689-90.

To begin with, the federal right to due process does not require proof beyond a reasonable doubt in civil commitment proceedings. *Paddington v. Texas*, 441 U.S. 418, 432 (1979). Therefore, any failure to set forth such a standard of proof would not in and of itself violate due process. California has chosen to use a beyond-the-reasonable-doubt standard in

6

civil commitment proceedings, and due process does require that instructions correctly set forth state law. To show such a violation, petitioner would have to show both that the instruction was ambiguous and a "reasonable likelihood" that the jury applied the instruction in a way relieved the state of its burden of proving every element beyond a reasonable doubt. *Waddington v. Sarausad*, 555 U.S. 179, 190-191 (2009). This instruction was neither ambiguous nor did it lower the burden of proof. According to petitioner, the instruction's second paragraph confused the jury into thinking that the state's burden was not to prove every element of the offense true beyond a reasonable doubt, but rather that it could prove the likelihood of re-offense element by less than a preponderance of the evidence (Pet. 12). The *existence* of a "likelihood" of reoffense is an element of the offense, which the instruction clearly stated in the first paragraph must be proven true beyond a reasonable doubt. The second paragraph of the instruction simply specified the *extent* of the likelihood necessary to amount to a "likelihood" for purposes of the SVP determination. That is, where as here the state's evidence placed the likelihood at between 15 and 25 percent chance of re-offense, the state still had to prove beyond a reasonable doubt that such a level of likelihood existed. The California Court of Appeal's conclusion that there was no "reasonable likelihood" the jury applied the instruction in an impermissible manner — *i.e.*, to lower the prosecution's burden to prove every element of an SVP determination true beyond a reasonable doubt — was both a reasonable application of and not contrary to federal law. *See Johnson*, slip op. at 13-14. Accordingly, federal habeas relief is not warranted on this claim.

        3.      <u>Claim Four</u>

Petitioner claims that the failure of the trial court to a instruct the jury that he was presumed not to be an SVP violated the California Constitution. The trial court rejected petitioner's argument that the SVPA and the California Constitution required an instruction that he is presumed not to be an SVP until proven otherwise. The California Court of Appeal found that the trial court did not err under state law. *Johnson*, slip op. at 16.

Federal habeas relief cannot be granted based upon petitioner's claim that the trial court violated the California Constitution because the federal habeas writ is unavailable for violations

7

of state law or for alleged error in the interpretation or application of state law. *Swarthout v. Cooke*, 131 S.Ct. 859, 861-62 (2011). The California Court of Appeal's conclusion, moreover, that state law did not require an instruction on the presumption of innocence is binding here. *Hicks v. Feiock*, 485 U.S. 624, 629-30 n.3 (1988) (state court's interpretation of state law, including one announced on direct appeal of challenged conviction, binds federal court sitting in habeas corpus). And finally, even if petitioner claimed a violation of the federal right to due process, AEDPA requires "clearly established" United States Supreme Court in order to grant federal habeas relief. There is no such precedent; indeed, the Supreme Court has enumerated the requirements of due process in civil commitment proceedings, and a presumption of innocence is not one of the requirements. *See Vitek v. Jones*, 445 U.S. 480, 491-96 (1980); *cf. Kentucky v. Whorton*, 441 U.S. 786, 789 (1979)) (federal constitution does not require an instruction on the presumption of innocence in criminal proceedings).

Accordingly, petitioner is not entitled to federal habeas relief on this claim.

4. <u>Claim Five</u>

Petitioner claims that the jury's verdict was not supported by sufficient evidence. After AEDPA, sufficiency of evidence claims in federal habeas petitions are subject to a "twice-deferential standard." *Parker v. Matthews,* 132 S. Ct. at 2152 (2012) (per curiam). First, relief must be denied if, viewing the evidence in the light most favorable to the prosecution, there was evidence on which "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Ibid.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 324 (1979)). Second, a state court decision denying a sufficiency challenge may not be overturned on federal habeas unless the decision was "objectively unreasonable." *Ibid.* (citing *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011)). A federal court does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt has there been a due process violation. *Jackson*, 443 U.S. at 324.

Petitioner argues there was insufficient evidence to support the jury's SVP finding because the prosecution's experts did not base their diagnosis of him upon current

8

psychological symptoms or recent behaviors, and their diagnosis relied upon factors contradicted by facts. He cites the facts that his last sexual assault was in 1992, he was never found with coercive sexual pornography, he did not talk about wanting to coerce sex, and he had regular consensual sex with his wife.

To prove that a defendant is an SVP, the state need not offer proof of a recent act while the person is in custody. Cal. Welf. & Inst. Code § 6600(d). Rather, the state must show "recent objective indicia of a defendant's condition and a recent objective basis for a finding that an inmate is likely to reoffend." *Johnson*, slip op. at 8 (quoting *People v. Buffington*, 74 Cal.App.4th 1149, 1161 (1999)).

In rejecting petitioner's claim, the California Court of Appeal carefully explained why the evidence was sufficient for a rational juror to find he was an SVP. The state's experts' qualifications were not disputed, and they testified that petitioner currently had the disorder, not just that he had it in the past. Moreover, Dr. D'Orazio testified that people with the disorder do not typically act out while in custody — as petitioner has been since 1992 — and can manifest again after a latent period. In addition, Dr. Padilla testified that the disorder could not be cured, only managed, which petitioner was not doing effectively because he did not accept full responsibility for having committed rape. Both experts also applied an actuarial method to determine his "likelihood" of reoffending, which, under state law, need not be greater than 50 percent. Rather, under the SVPA, the likelihood of re-offense must be simply a "serious or well-founded risk." A rapist with 15-25 percent chance of raping again when released into the community could rationally be considered a "serious" risk to that community given the gravity and serious harm a rape causes.

Furthermore, petitioner shared characteristics with others with the disorder, including the number of victims, the long history of sexual violence spanning ten years, his rapid recidivism upon his release from custody, his advance planning of the assaults, his ability to sustain sexual arousal despite the distress of his victims, and his use of more force than necessary to gain compliance of the victims. Based upon this evidence, the jury could rationally find recent objective indicia of the disorder because his lack of recent sexual assaults could

9

rationally be attributed to his incarceration, his disorder could be latent, he was not effectively managing it, and he shared numerous characteristics of those with the disorder who were likely to reoffend.

Petitioner argues that the jury could not have rationally believed the prosecution experts' diagnoses of him with a disorder because he "has engaged in sex with 50 to 200 sexual partners" and "is clearly able to achieve and maintain arousal even when coercion is not present" (Pet. 14). This argument is not persuasive. As correctly noted by the Court of Appeal, Dr. Padilla testified that people who have paraphilic coercive disorder can and do have consensual sex in addition to coercive sex. And there is no evidence that a large number of sexual partners diminishes the probability that someone will commit rape. Petitioner has not shown why a rational juror could have found that his consensual sex precluded him from suffering from a disorder that posed a current, serious and well-founded risk of reoffense if he was free in the community.

Accordingly, petitioner's claim of insufficient evidence does not establish grounds for federal habeas relief.

5. <u>Claim Six, Seven and Eight</u>

In his sixth claim, petitioner argues that the SVPA violates the Equal Protection Clause because (1) it allows a trial court to summarily dismiss without a hearing a petition for release on frivolous grounds (Cal. Welf. & Inst. Code § 6608), while the same cannot be done in other civil commitment proceedings for Mentally Disordered Offenders ("MDO") and insanity acquittals ("NGI") (Cal. Pen. Code §§ 1026 et seq., 2960 et seq.), and (2) SVPs are committed for indeterminate terms with annual review in which they have the burden of proof seeking release (Cal. Welf. & Inst. Code § 6604) while MDOs and NGIs are only committed for one or two years (Cal. Pen. Code §§ 1026.5(b)(8), 2970(b)). In his seventh claim, petitioner argues that the SVPA violates due process because it commits SVPs to an indeterminate term with annual review. In his eighth claim, he argues that the SVPA violates the Ex Post Facto Clause Jeopardy Clause.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State

shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). Our court of appeals has found that there is no clearly established Supreme Court precedent prohibiting treating SVPs differently from MDOs and NGIs, finding them to be similarly situated, or applying any stricter scrutiny to such differentiation than rational basis review. *Seeboth v. Allenby*, 789 F.3d 1099, 1105-06 (9th Cir. 2015) (SVPA does not violate equal protection even though it sets no time limit for trial on whether detainee should be re-committed (for indefinite term), despite statutes granting timing provision to other civilly-committed persons, such as mentally disordered offenders and those not guilty by reason of insanity); *see also Taylor v. San Diego Cty.*, 800 F.3d 1164, 1171 (9th Cir. 2015) (California Court of Appeal did not unreasonably apply clearly established federal law in determining that sexually violent predators are not similarly situated to other civil committed individuals); *Litmon v. Harris*, 768 F.3d 1237, 1243 (9th Cir. 2014) (SVPs are not similarly situated to MDOs, allowing them to be treated differently). The rational basis from treating SVPs differently from MDOs and NGIs — who have been found mentally ill and dangerous, but not sexually dangerous — is that a state may rationally determine that sexually violent crime is "qualitatively more dangerous" than other violent crime. *Seeboth*, 789 F.3d at 1106. Based on this authority, the California Court of Appeal did not violate or unreasonably apply clearly established Supreme Court precedent in holding that the SVPA does not violate the Equal Protection Clause by treating SVPs differently from other civilly committed persons. Accordingly, petitioner may not obtain federal habeas relief on this claim.

Petitioner claims that the SVPA violates due process because, after the initial commitment trial at which the state must prove that the detainee is an SVP beyond a reasonable doubt, the detainee has the burden to show he is no longer an SVP at annual petitions for release from custody. Our court of appeals has rejected this claim for federal habeas relief under AEDPA, holding that there is no clearly established Supreme Court authority prohibiting such burden shifting for civil commitment proceedings. *Taylor v San Diego County*, 800 F.3d 1164, 1172 (9th Cir. 2015). Accordingly, the California Court of Appeal's denial of petitioner's due

11

process claim does not entitle him to federal habeas relief under AEDPA.

Petitioner claims that the SVPA violates the Ex Post Facto and Double Jeopardy Clauses because the commitment term is an indeterminate term with annual review, a change brought about by the passage of Proposition 83. When a prisoner is civilly committed after completing his or her criminal sentence, the commitment does not violate the Double Jeopardy or Ex Post Facto Clauses as long as the commitment statute does not establish criminal proceedings. *See Kansas v. Hendricks*, 521 U.S. 346, 359-69 (1997) (finding Kansas SVP proceedings not criminal). For purposes of its constitutionality, the SVPA is similar in all relevant respects to the Kansas statute upheld in *Hendricks*, and as such the proceedings it establishes are not criminal in nature. *See Hubbart v. Knapp*, 379 F.3d 773, 779-80 (9th Cir. 2004). The determination in *Hubbart* that SVPA's commitment proceedings are not "criminal" in nature under *Hendricks* is not altered by Proposition 83. *See Taylor*, 800 F.3d at 1171 (holding "[o]ur ruling in *Hubbart* remains the law of the circuit" after passage of Proposition 83). As SVPA proceedings are not criminal in nature, the California Court of Appeal's conclusion that petitioner's commitment did not violate the Ex Post Facto or Due Process Clauses was neither contrary to nor an unreasonable application of federal law under the AEDPA.

**CONCLUSION**

The petition for a writ of habeas corpus is **DENIED** without prejudice. Petitioner has failed to make a substantial showing that a reasonable jurist would find the denial of his claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, no certificate of appealability is warranted in this case.

The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: July  11 , 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE